UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re Intermet Corporation, et. al.

        Reorganized Debtor.

Case No. 04-67597
(Jointly Administered)
Chapter 11
Hon. Marci B. McIvor

_____/

Tool Products, LLC (f/k/a Tool Products, Inc.)

        Plaintiff,

v.

Adv. Pro. No. 06-05570

Line Precision, Inc.

        Defendant.
_____/

## OPINION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on defendant Line Precision, Inc.'s Motion for Summary Judgment on Plaintiff's three-count Complaint. The Complaint seeks the return of alleged preferential payments totaling $71,725, pursuant to 11 U.S.C. § 547(b).[1] For the reasons stated in this Opinion, the Motion is denied.

### I. Factual Background

Plaintiff Tool Products, LLC (f/k/a Tool Products, Inc.) filed a voluntary chapter 11 bankruptcy petition on September 29, 2004 (*In re Tool Products, Inc.*, case no. 04-

---

[1]Count I of the Complaint seeks to recover preferential payments pursuant to 11 U.S.C. § 547(b). Count II seeks recovery of the funds transferred pursuant to 11 U.S.C. § 550. Count III contends that, pursuant to 11 U.S.C. § 502(d), any claims filed by Defendant in this bankruptcy must be disallowed until Defendant has returned the transfers.

67610).  As a subsidiary of Intermet Corporation, Tool Products' case was jointly administered with the bankruptcy case of its parent and other subsidiaries.  An Order confirming a chapter 11 plan for both the parent and subsidiary companies was entered on September 29, 2005.

Prior to its reorganization, Plaintiff Tool Products, LLC (a Delaware limited liability corporation) was a Delaware corporation doing business in Tennessee and Michigan.  It operated under the assumed name "Intermet Jackson Plant". (Plaintiff's Ex. 2 and 3).  Plaintiff's Exhibit 2 is a copy of an "Application for Registration of Assumed Name" filed on February 27, 2001. The Application states that "Intermet Jackson Plant" is an assumed name for Tool Products, Inc.  Plaintiff's Exhibit 3 is a document from the Tennessee Secretary of State's website titled "Business Information Search."  The document indicates that Tool Products, Inc. had a principal place of business at 700 Tower Drive, Troy, Michigan, and that its registered agent is "Corporation Service Company" , located at 2908 Poston Avenue, Nashville Tennessee.  The business information search document makes no reference to Intermet Jackson or the address at which the Intermet Jackson plant operated (i.e. 825 Lower Brownsville Road, Madison West Industrial Park, Jackson, Tennessee).

Plaintiff's parent company, Intermet Corporation ("Intermet"), is a Michigan corporation with no assumed names, and corporate offices located in Troy, Michigan. (Affidavit of Alan Miller, former officer of both Intermet and Plaintiff).   Defendant Line Precision, Inc., located in Farmington Hills, Michigan, specializes in automotive design, engineering, prototype fabrication and validation.

2

The record does not disclose exactly when the parties' business relationship began. Defendant's Exhibit B indicates that "in year 2004 and for a number of years prior, Line Precision designed, manufactured and sold goods to Intermet Corporation." (Defendants Ex. B, affidavit of Stanley Clarke, ¶ 5). Line Precision "was a lower-tiered supplier of product to Intermet" for Intermet's projects with auto manufacturers. (Defendant's Ex. B ¶ 6). According to Defendant Line Precision's president, Stanley Clarke, Intermet typically directed Line Precision regarding where goods would be shipped. Shipping locations included Lynchburg, Virginia; Pulaski, Tennessee; Columbus, Georgia; Strutevant, Wisconsin; Troy, Michigan; Jackson, Tennessee, and Monroe City, Missouri. During 2004, Defendant's primary contact person at Intermet was Bob Mallon, an Intermet employee.

At issue in the present Motion are payments on invoices related to a Purchase Order Number 116802, dated June 9, 2004, and subsequently amended on June 14, 2004, June 17, 2004, and July 13, 2004. (Defendant's Ex. H). The Purchase Orders were ostensibly issued by Intermet. Intermet's name appears in capital letters at the top of the Orders and again above the signature at the bottom of the Orders. The Orders were signed by Sheri Church, a buyer for Tool Products. (Plaintiff's Ex. 13, Affidavit of M.C. Gatlin, plant controller for the Jackson Plant, ¶ ¶ 6,7). Tool Products' name does not appear anywhere on the face of the Purchase Orders nor does it appear in the fine print on the reverse side of the Purchase Orders. The Purchase Orders indicate that the goods should be shipped and invoices sent to "Intermet Jackson" in Jackson, Tennessee.

The Purchase Orders pertain to a prototype project at General Motors Corporation known as the "Lambda Project". The project was facilitated by two of Intermet's research and development employees, Bob Mallon and Dan Schellhase. (Plaintiff's Brief at 2). Minutes from a May 4, 2004 "kickoff" meeting regarding the Lambda project (Defendant's Ex. O, electronic mail sent by Bob Mallon to the meeting attendees) indicate that Line Precision was represented by three employees, Randy Clarke, Jeff Houle and Matt Combs, and Intermet was represented by two employees, Gordon Peters and Bob Mallon. The meeting minutes indicate that issues including prototype and delivery requirements were discussed. Additional e-mails attached to Defendant's Brief indicate that Bob Mallon was the Intermet employee directing production, scheduling, and delivery of the parts on Intermet's behalf. (Defendant's Ex. P and Q).

After completing the work, defendant Line Precision issued four "shipper" notices. Shipper notice 17334, dated June 14, 2004, indicates that the goods were sold to "Intermet Corporation - Jackson Plant" at a Jackson, Tennessee address. The goods were not shipped by Line Precision, but were picked up by the purchaser, Intermet's Bob Mallon. (Defendant's Ex. I). The other three shipper notices, numbers 17333, 17404, and 17406, dated June 11, 2004, July 12, 2004 and July 12, 2004 respectively, indicate that the goods were sold to "Intermet Corporation - Jackson Plant" in Jackson, Tennessee, and shipped by Line Precision to SMW Automotive in Warren Michigan. (Defendant's Ex. J).

Line Precision sent corresponding invoices to Intermet. The invoices, numbered

4

16432, 16433, 16483 and 16485, were billed to Intermet Jackson in the total amount of $71,725. The invoices were paid by two checks issued by Intermet Jackson (Tool Products name does not appear on either check): check number 18520, in the amount of $47,883, which cleared the bank on August 2, 2004, and check number 18599 in the amount of $23,842, which cleared the bank on August 10, 2004. These two checks, totaling $71,725, are the alleged preferential transfers Plaintiff seeks to recover in the present action.

Concurrent with or subsequent to the transactions related to GM's Lambda project, defendant Line Precision, Intermet, and/or plaintiff Tool Products engaged in other transactions, as follows:

| Invoice | Order Date | Invoice Date | Bill To | Shipped To | Amount | Terms |
|---|---|---|---|---|---|---|
| 16514 | 7/2/04 | 7/21/04 | Intermet Corp, Troy, MI | Intermet Tech. Center, Lynchburg, VA | $2,938.43 | Net 30 |
| 16526 | 7/7/04 | 7/26/04 | Intermet Corp. Troy, MI | Intermet Tech. Center, Lynchburg VA | 7,309.41 | Net 30 |
| 16609 | 7/7/04 | 8/18/04 | Intermet Corp. Troy, MI | Honda R & D Raymond, OH | 35,727.68 | Net 30 |
| 16611 | 7/13/04 | 8/18/04 | Intermet Corp. Troy, MI | Honda R & D Raymond, OH | 7,941.67 | Net 30 |
| 16612 | 7/29/04 | 8/18/04 | Intermet Corp. Troy, MI | Honda R & D Raymond, OH | 3,192.08 | Net 30 |
| 16613 | 7/30/04 | 8/18/04 | Intermet Corp. Troy, MI | Honda R & D Raymond, OH | 4,686.00 | Net 30 |
| 16614 | 8/3/04 | 8/18/04 | Intermet Corp. Troy, MI | Honda R & D Raymond, OH | 6,365.56 | Net 30 |
| 16615 | 8/4/04 | 8/18/04 | Intermet Corp. Troy, MI | Honda R & D Raymond, OH | 23,512.58 | Net 30 |

| Invoice | Order Date | Invoice Date | Bill To | Shipped To | Amount | Terms |
|---|---|---|---|---|---|---|
| 16616 | 8/4/04 | 8/18/04 | Intermet Corp. Troy, MI | Honda R & D Raymond, OH | 1,020.00 | Net 30 |
| 16664 | 7/30/04 | 9/3/04 | Intermet Jackson, Jackson, TN | Intermet Jackson, Jackson, TN | 1,029.19 | Net 30 |
| 16665 | 8/13/04 | 9/3/04 | Intermet Jackson, Jackson, TN | SMW Auto. Warren, MI | 5,502.00 | Net 30 |
| 16666 | 8/16/04 | 9/3/04 | Intermet Jackson, Jackson, TN | Intermet Jackson, Jackson, TN | 2,751.00 | Net 30 |
| 16688 | 9/9/04 | 9/15/04 | Intermet Corp. Troy, MI | Intermet Corp. Troy, MI | 1,848.00 | Net 30 |

Plaintiff Line Precision contends that subsequent to the August payments, it provided Intermet with "new value" in the total amount of $103,823.60 (the total amount of the invoices in the chart above), which was not paid as a result of Intermet's bankruptcy filing. Specifically, Defendant argues that subsequent to the August 2, 2004 payment from Tool Products, new invoices numbered 16609, 16611, and 16612 (totaling $51,547.43) were sent by Line Precision to Intermet requesting payment for goods shipped. Subsequent to the August 10, 2004 payment by Tool Products, new invoices numbered 16613, 16614, and 16615 (totaling $34,564.14) were presented by Line Precision to Intermet for payment. Defendant asserts that these six invoices, totaling $86,111.57, constitute new value in excess of the alleged preferential payments, sufficient to offset the preferences.[2]

---

[2]Line Precision filed a claim in the amount of $127,616.60 in the Intermet bankruptcy case (04-67597). The claim designates $103,823.60 (the total amount of invoices in the chart above) as unsecured and $23,793 as priority. The documentation attached to Defendant's Brief in support of the administrative claim is incomplete and the Court cannot determine the details relating to the amounts allegedly owed.

6

Alternatively, Defendant contends that the August 2 and August 10 payments were either earmarked from Intermet for the benefit of Tool Products, or made in the ordinary course of business between Intermet and Tool Products, thus saving those payments to Defendant from Plaintiffs preference challenge.

## II. Jurisdiction

Bankruptcy courts have jurisdiction over all cases under Title 11 and all core proceedings arising under Title 11 or in a case under Title 11. 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

## III. Standard for Summary Judgment

Fed. R. Civ. P. 56(c) for summary judgment is incorporated into Fed. R. Bankr. P. 7056(c). Summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of

---

Presumably, the priority claim represents amounts advanced after the date of the bankruptcy petition. Line Precision did not file a claim in the Tool Products' bankruptcy case (04-67610).

material fact." *Celotex*, 477 U.S. 317, 323. A "genuine" issue is one where no reasonable fact finder could return a judgment in favor of the non-moving party. *Berryman v. Reiger*, 150 F.3d 561, 566 (6th Cir. 1998) (citing *Anderson*, 447 U.S. at 248). Once the movant meets this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the non-moving party, the motion should be granted." *Cox v. Kentucky Dept. of Transportation*, 53 F.3d 146, 149-50 (6th Cir. 1995) (internal quotation marks and citation omitted).

## IV. Analysis

Plaintiff contends that the August payments made to defendant Line Precision are preferential transfers pursuant to 11 U.S.C. § 547(b).[3] That section states:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property –
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made –
>
>     (A) on or within 90 days before the date of the filing of the petition; or
>
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

---

[3]This is a pre-BAPCPA case.

8

(5) that enables such creditor to receive more than such creditor would receive if–

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

In order to establish a preferential transfer, the Trustee must prove that each element of § 547(b) has been satisfied. *Waldschmidt v. Ranier (In re Fulghum Constr. Corp.)*, 706 F.2d 171, 172 (6th Cir.), *cert. denied sub nom.*, *Ranier & Assoc. v. Waldschmidt*, 464 U.S. 935 (1983). Once a preference is established, the burden shifts to the defendant to assert statutory defenses to the preference action– defenses which may allow a defendant to retain the preferential payment. (*See* 11 U.S.C. §§ 547(c)(1) - (c)(9)).

In its Motion for Summary Judgment, Defendant makes four arguments in support of retaining the payments at issue. First, it argues that the present adversary proceeding is brought by the wrong plaintiff. Line Precision contends that its contract is with Intermet, Plaintiff's parent corporation, not with Intermet's subsidiary, Tool Products. Because the payments, according to Defendant, came from Intermet, Intermet is the proper plaintiff to bring the present action. Second, Defendant contends that the payments are protected by the earmarking doctrine–a doctrine which excepts from preference actions payments made by a third party to a debtor's creditor. Debtor's earmarking argument appears to be that if Intermet is found to be the proper plaintiff in this case, funds paid by Intermet to its subsidiary Tool Products, were earmarked for

9

payment to defendant Line Precision, and are thus excepted from a preference action. Third, Defendant argues that the payments were made in exchange for new value pursuant to 11 U.S.C. § 523(c)(4). Fourth, Defendant asserts that the payments were made in the ordinary course of business pursuant to 11 U.S.C. § 523(c)(2).

### A. Determining Which Entity, the Parent or the Subsidiary, is the Proper Plaintiff Raises a Genuine Issue of Material Fact

The legal relationship between Intermet and Tool Products, Inc. is not clear from reviewing the corporate records and documents submitted by the parties. The corporate records for the state of Tennessee disclose that "Intermet Jackson Plant" is an assumed name, but is not obvious that it is an assumed name for "Tool Products, Inc." or that "Tool Products, Inc." is a subsidiary of Intermet. The principal office for "Intermet Jackson Plant" is listed as 700 Tower Drive, Troy, Michigan, presumably the address for Intermet.

The purchase orders given to Defendant include the names "Intermet" and "Intermet Jackson Plant", but not Tool Products, Inc. The purchase orders were received through parties Defendant knew to be Intermet employees. While technically, the corporate entity Defendant was dealing with may have been Tool Products, that fact was not clearly disclosed to Defendant nor was it obvious from the parties prior course of dealing. The checks issued to pay for the work performed under the purchase orders have Intermet's name on them in large capital letters, along with "Jackson Plant" in smaller capital letters. Tool Products' name does not appear anywhere on the checks.

10

Line Precision dealt with Intermet employees Bob Mallon and Gordon Peters on the Lambda project. Bob Mallon was involved in facilitating the Lambda project, and directing shipment of the product to various Intermet and/or customer sites. Bob Mallon appears to have been Defendant's primary contact on the project from the kickoff meeting through the shipment process.

Based on the record before the Court, Intermet appears to have treated the two corporations as interchangeable, at least for purposes of obtaining these particular goods from Defendant. The use of Tool Products' assumed name "Jackson Plant" along side "Intermet" on purchase orders and checks, without disclosing or using the name "Tool Products" creates confusion. "Jackson Plant" appears to be a shipping destination, not a separate corporate entity. Defendant's confusion at being served an adversary complaint with Tool Products as plaintiff is understandable.

While the Court concludes that there is a question as to whether the preferential payments were made by Intermet, the parent, or Tool Products, the subsidiary, the existence of this issue does not result in summary judgment for the Defendant. Rather, it is a preliminary issue which must be resolved before this case goes to trial because the Complaint must be brought by the proper plaintiff, and the validity and amount of Defendant's new value defense is substantially altered depending on whether Intermet or Tool Products is the proper plaintiff. Neither party briefed the issue of how "debtor" is defined for purposes of 11 U.S.C. § 547(b) when the course of dealing between a parent corporation, a subsidiary corporation, and a preference defendant, is muddled, as it is in this case. The Court will issue an Order in conjunction with this Opinion

requiring the parties to brief the question of whether Intermet or Tool Products is the proper plaintiff for purposes of § 547(b).

Defendant is not entitled to Summary Judgment based on its assertion that the Complaint was brought by the wrong party. Defendant is entitled to a determination of whether Tool Products is the proper plaintiff. The Court will rule on this preliminary issue after briefs have been submitted.

**B.  The Earmarking Doctrine Does Not Apply to the Facts in this Case**

Defendant Line Precision argues that the earmarking doctrine protects the preferential payments made it by Intermet and/or Tool Products. "Under the [earmarking] doctrine, if a third party provides funds for the specific purpose of paying a creditor of the debtor, the funds may not be recoverable as a preferential transfer because the proceeds never became part of the debtor's estate." *In re Schmiel*, 319 B.R. 520, 525 (Bankr. E.D. Mich. 2005).

> When a third person makes a loan to a debtor specifically to enable that debtor to satisfy the claim of a designated creditor, the proceeds never become part of the debtor's assets, and therefore no preference is created. The rule is the same regardless of whether the proceeds of the loan are transferred directly by the lender to the creditor or are paid to the debtor with the understanding that they will be paid to the creditor in satisfaction of his claim, so long as the proceeds are clearly earmarked.
>
> Under the 'earmarking doctrine', funds provided to a debtor for the purpose of paying a specific indebtedness may not be recoverable as a preference from the creditor to which they are paid, on the premise that the property 'transferred' in such a situation was never property of the debtor and so the transfer did not disadvantage other creditors. One creditor has been substituted for another thus, when new funds are provided by the new creditor to or for the benefit of the debtor for the

12

purpose of paying the obligation owed to the old creditor, the funds are
said to be 'earmarked' and the payment is held not to be a voidable
preference.

5 *Collier on Bankruptcy,* ¶ 547.03[2] at 547-24 (15th ed. rev.2004) (footnote omitted).

The earmarking doctrine does not apply in the present case. The funds received by Defendant were unquestionably part of *a* Debtor's estate, the question is *which* Debtor's estate; Intermet, the parent, or Tool Products, the subsidiary. Payments were on account of an antecedent debt, and therefore diminished the estate. Defendant does not allege, nor do any documents show, that the payments made to Defendant Line Precision were payments received by Intermet/Tool Products from a non-debtor third party and earmarked to pay off Intermet/Tool Products' creditors.

Defendant is not entitled to summary judgment on its argument that earmarking protects the preferential payments from avoidance.

## C. The New Value Exception: 11 U.S.C. § 547(c)(4)

Under § 547(c)(4), a preferential transfer may not be avoided where the creditor contributes new value in return for payments from the debtor. Specifically, § 547(c)(4) excepts transfers,

> (4) to or for the benefit of a creditor, to the extent that, after such transfer,
> such creditor gave new value to or for the benefit of the debtor –
>
>   (A) not secured by an otherwise unavoidable security
>   interest; and
>
>   (B) on account of which new value the debtor did not make
>   an otherwise unavoidable transfer to or for the benefit of
>   such creditor[.]

For the new value defense to apply, the following sequence of events must have

13

taken place:

>   (1) the creditor must have received a preference otherwise avoidable under section 547(b);
>
>   (2) after receiving the preferential transfer, the creditor must advance additional unsecured credit to the debtor; and
>
>   (3) the additional credit must be unpaid.

*Paloian v. Quad-Tech, Inc. (In re GGSI Liquidation, Inc.)*, 313 B.R. 770, 777 (Bankr. N.D. Ill. 2004)(citations omitted). This exception "encourages continuation of credit extensions to distressed companies by limiting the risk of loss to those creditors who continue dealing with the debtor on a credit basis, yet insulates other creditors from harm by requiring the preferred creditor to replenish the estate with new value." *Intercontinental Polymers, Inc. v. Equistar Chemicals, LP (In re Intercontinental Polymers, Inc.)*, 359 B.R. 868, 876 (Bankr. E.D. Tenn 2005)(citing *Charisma Inv. Co. N.V. v. Airport Sys., Inc. (In re Jet Fla. Sys. Inc.)*, 841 F.2d 1082, 1083 (11th Cir. 1988)).

The new value given after a preferential transfer helps a defendant only if it is not secured by an unavoidable security interest. *See* 11 U.S.C. § 547 (c)(4)(A). "This makes sense because the debtor is not enhanced if the new value given after the preferential transfer is subject to liens and would not balance the loss caused by the preferential transfer." *Phoenix Restaurant Group, Inc. v. Ajilon Professional Staffing,LLC (In re Phoneix Restaurant Group, Inc.)*, 317 B.R. 491, 495 (Bankr. M.D.Tenn. 2004).

The relevant date for determining when new value is given is the date of the shipment of the goods. *Intercontinental Polymers*, 359 B.R. at 882. This is consistent

with § 547(c)(4)'s purpose of encouraging creditors to deal with troubled businesses. "[U]se of the delivery date would treat creditors arbitrarily based on the method of shipment used or distance the product must travel." *Id.*

In the present case, Defendant contends that the first preferential transfer was made on August 2, 2004, totaling $47,883 (one check paying invoices 16432 and 16433). After August 2, 2004, new invoices (16609, 16611 and 16612) totaling $51,547.43 were sent to Intermet for goods provided to them. The date on which the goods were shipped is not clear. The second preferential transfer was made on August 10, 2004 totaling $23,842 (one check for invoices 16483 and 16485). Subsequent to that transfer, but prior to the bankruptcy petition, new invoices (16613, 16614 and 16615) totaling $34,564.14 were presented to Defendant. Again, the shipping date is unclear. All six of the invoices were unpaid as of the petition date. According to Defendant, "the unpaid invoices constitute a benefit to the creditor or new value to Intermet (as debtor) after any alleged preferential transfers were made", thus satisfying the requirements of § 547(c)(4). (Defendant's Brief at 12).

Plaintiff contends that Defendant did not advance any new value to Plaintiff because the invoices relied upon by Defendant as new value were issued to Intermet (or other Intermet subsidiaries), not Tool Products. Because Plaintiff has not yet established that Tool Products, rather than Intermet, actually made the preferential payments, there is a question of fact as to whether the new value defense defeats Plaintiff's preference action.

**D. The Ordinary Course of Business Exception: 11 U.S.C. § 547(c)(2)**

Under § 547(c)(2), a trustee may not avoid a transfer,

to the extent that such transfer was

> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>
> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>
> ( C) made according to ordinary business terms.

Defendant bears the burden of proving each of the three elements of a § 547(c)(2) by a preponderance of the evidence. *Luper v. Columbia Gas of Ohio, Inc. (In re Carled, Inc.)*, 91 F.3d 811, 813 (6th Cir. 1996).

According to the Sixth Circuit Court of Appeals, this section is intended to "protect recurring, customary credit transactions which are incurred and paid in the ordinary course of business of the Debtor and the transferee." *Waldschmidt v. Ranier (In re Fulghum Constr. Corp.)*, 872 F.2d 739, 743 (6th Cir. 1989) *quoting In re Energy Co-Op, Inc.*, 832 F.2d 997, 1004 (7th Cir. 1987). The ordinary course defense has a three part conjunctive test. The first prong (§ 547 (c)(2)(A)), showing that the debt was incurred in the ordinary course of business between the debtor and the transferee is rarely at issue.

> Subsections (B) and (C) of section 547(c)(2) 'comprise a subjective and objective component respectively.' *Logan v. Basic Distribution Corp. (In re Fred Hawes Org., Inc.)*, 957 F.2d 239, 244 (6th Cir. 1992). 'The subjective prong (subsection (B)) requires proof that the debt and its payment are ordinary in relation to other business dealings between that creditor and that debtor. The objective prong (subsection (C)) requires proof that the payment is ordinary in relation to the standards prevailing in the relevant industry.' *Id.*

16

*Roberds Inc. v. Broyhill Furniture (In re Roberds, Inc.)*, 315 B.R. 443, 455 (Bankr. S.D. Ohio 2004)(quoting *Luper v. Columbia Gas of Ohio, Inc. (In re Carled, Inc.*, 91 F.3d 811, 813 (6th Cir. 1996). "Whether a payment is made in the ordinary course of business and according to ordinary business terms is a factual determination. . . " *In re Fulgham Constr. Corp.*, 872 F.2d 739, 742 (6th Cir. 1989).

In the present case, Defendant offers the affidavit of Barry Lefkowitz, a certified public accountant, as an expert regarding ordinary course. (Defendant's Ex. R). He asserts that outstanding accounts receivable in Line Precision's line of business range from 37 days to 64 days, with an average outstanding of 50 days. The transfers at issue in this case were 48, 49, 29, and 29 days respectively. "The alleged preferential transfers outstanding for 48 and 49 days are within the range of days for outstanding receiveables for the industry, and only 1 and 2 days off the industry average. . . the two alleged preferential transfers paid in 29 days were never outstanding, but in fact were paid under the net 30 day terms which represent payment within the ordinary course of business." (Defendant's Brief at 14).

In looking at the ordinary course of business between Intermet and Line Precision, Defendant looked back over four years and determined that the average outstanding period for accounts receivable was 55 days, with a range of 23 days to 108 days. (Defendant's Ex. S). Because all of the alleged preferential transfers were within both the industry standard and the ordinary course for Interment and Line Precision, Defendant contends that the payments satisfy § 547(c)( 2).

Plaintiff contends that Defendant wrongly focuses on the ordinary course of

17

business between Line Precision and Intermet.  According to Plaintiff, the proper focus is on the ordinary course of business between Line Precision and Tool Products.  Plaintiff asserts that "[b]ecause the subject transfers were in satisfaction of an antecedent debt owned (sic) by Tool Products, not Intermet Corp, to Line Precision, any Intermet Corp. transactions are irrelevant to a determination of the ordinary course of business between the parties."  (Plaintiff's Brief at 6).  Plaintiff argues that there were no other transactions between Tool Products and Line Precision–only the alleged preferential transfers.  "[O]f the four transfers at issue, two of these were late payments. . . i.e. the transfers paid invoices beyond the stated payment terms."  (Plaintiff's Brief at 7).  Specifically, invoice 16433 dated June 14, 2004 and due (net 30 days) on July 14, 2004 was paid 19 days late (August 2, 2004) and invoice number 16432 dated June 15, 2005 and due July 15, 2004 was paid 18 days late (August 2, 2004). (Plaintiff's Brief at 7).  Plaintiff argues that late payments are presumptively non-ordinary, and that Defendant can overcome the presumption only be showing a prior course of dealing establishing that late payments were normal between the parties. (Plaintiff's Brief at 7).

The issue of what constitutes the ordinary course of business between the parties begs the preliminary question, already identified as a genuine issue of material fact in this case, of who the relevant parties are–specifically, whether the proper plaintiff is Intermet or Tool Products.  Once the proper plaintiff is determined, the parties can proffer evidence regarding the ordinary course of business.

## V. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is

denied.

**Signed on November 09, 2007**

                                                      **/s/ Marci B. McIvor**
                                                **Marci B. McIvor**
                                                **United States Bankruptcy Judge**